Good morning, thank you your honor. Robert Hamilton on behalf of appellant Harry Proudfoot. I'm going to try and reserve approximately three minutes for rebuttal. This case was a case that went to trial and involved a family mining business started by appellant Harry Proudfoot and involved three of his mining site. The case specifically involved a mining site found in Ohio and their goal was to get into production. Investors were provided a PowerPoint which is in the the ER which was sort of what the government primarily relied upon and in this case there wasn't a dispute. There was a mining site, there were efforts made. I included the testimony of Mr. Proudfoot's son Daniel Proudfoot who was sort of in charge of operations. There was drilling for samples, there was testing of samples, they shipped large amounts of the best processing methods and the way the case set up was the government so I find there's harmful error in that given how the case was set up the the the defense that was presented versus the government's position which was hey there was intent to defraud they never intended to get into production. If you're looking at a harmful error analysis which is looking at the entire record not in the light most favorable to the government there was a real dispute over intent and given that the two pieces of evidence which are which formed the the arguments in this case the challenges in this case and that is the admission of Norm Stadley's testimony and the addition of the 1993 order. Those were significant harmful pieces of evidence. Counsel you yourself just said that intent was the main issue and that it was vigorously disputed so both of these pieces of evidence pertain to a rational jury's analysis of intent. If there's been fraud in the past it isn't it isn't possible to say well this one it's less possible to say that this one is is not fraudulent and so the question really is to me a 403 balancing and why is this an abuse of discretion? So on Norm Stadley starting with the Norm Stadley testimony I see that testimony sort of in two parts. There is the part about hey I gave seven hundred thousand dollars to Mr. Proudfoot and and I had to mortgage my farm for that. There was no testimony about investment materials. The Three Eagles company did not exist at that time. There wasn't there wasn't testimony about what happened at Manson Creek in British Columbia and so I feel that is that's argument is more testimony. Can we stop there though in terms of it does seem intertwined because when things are going south in Nevada all of a sudden the Stadley's you know kind of get roped into the Three Eagles scheme and there's a lot of testimony about that in terms of being listed and that sort of thing so it seems to me that in part it's background information and then it is intertwined information that would be quite legitimate under 404 and of course even if we might have said well I would or wouldn't have let it in the question is is a reversible error. I'm having some trouble understanding your argument so maybe you can amplify that with respect to this what I see is the intertwining between the transactions. Sure and I think there's a difference between the son Eric Stadley. I think there might be an argument that he was convinced to roll his 50,000 into the Three Eagles company but Norm Stadley who invested the $700,000 testified that he did not invest in Nevada or Ohio and he didn't roll anything into into the Three Eagles company. His note that they formulated in February 2008 was before Three Eagles ever even came to exist in April of 2008 and it was about 18 months before the September 2009 discovery of the Ohio site they proceeded on. So Norm Stadley did not roll his money into the Ohio site and what essentially came out is there was there was what happened to his debt? So so nothing so there was. Didn't it get rolled onto the books? No what happened was appellant Harry Proudfoot directed some $5,000 interest payments. Norm Stadley testified that he received I think three interest payments of $5,000 but. And those were from the Three Eagles? That was from Three Eagles but then also what was testified to by his son Matthew Proudfoot, Daniel Proudfoot and Harry Proudfoot himself in his SEC testimony which is in there they all said there are these $5,000 payments that were made that the children said you cannot be paying him he is not a Three Eagles investor and the money these $5,000 payments can't go to him and so Norm Stadley was not an investor for for Three Eagles and and there was there was significant testimony about the $5,000 payments and the government was saying hey that was the argument we needed to show these $5,000 payments there was no dispute the $5,000 payments were wrong what they wanted it for was in closing they described Norm Stadley as a victim of Three Eagles and it was it was extremely prejudicial under a 403 analysis and I think it also shows that the true purpose was was not the the intertwined aspect of the $5,000 the true purpose was the $700,000 I had to mortgage my farm and it was extremely damaging and that was not inextricably intertwined with the Three Eagles investment. Counselor you're down to a little over two minutes I don't know if you want to save some time. I will I would just quickly I'll go a little bit further and I just wanted to note on the duty to disclose I think it's a straightforward issue that the district court was correct on and the question is whether there is a duty to disclose based on a half-truth and these generalized claims of success and just going through the cases Lustiger was about availability of water on these plots being sold Lustiger cites a case called Casey which is about supposedly selling exclusive franchises Martinelli which I think the government and I cite are about it's about selling helping small owners sell businesses for a small initial fee but they use false testimonials and all buyers are pre-qualified and Laureate is failure to disclose bonus commissions I would just just like to emphasize that the generalized claim of success in this case I cannot find any case law that suggests that that would open the door to the 1993 order which was the basis of it being admitted what was that half-truth and I'll reserve the rest of my time thank you thank you we'll hear from Miss Potter may it please the court Amy Potter on behalf of the United States judge Simon did not abuse his discretion in admitting the testimony of Norm Stadelli or the 1993 cease and desist order and I'll start with mr. Stadelli because what feminine is now arguing is that Norm was never an investor well he was in the sense that Harry Proudfoot pulled him in to the three Eagles investment and how that happened was mr. Stadelli made a $700,000 investment in a prior mining organ organization and they couldn't pay him and he wanted his money back and so what did Harry do Harry said well why don't you come on over to three Eagles and we have government's exhibit 190 which is an email about welcome you're an investor but we also have another thing that Harry does another thing to lull mr. Pratt or mr. Stadelli into not asking for his money back he says I'll put you on the board I'll put a picture in all my promotional materials and I'll say you're a member of our board and so when Norm comes he said yes I did not invest in three Eagles but I counted on three Eagles to and I don't know why Harry put me on that I didn't do anything on the board but this is all part of the lulling because what mr. Proudfoot didn't need was angry prior investors screwing up his investment opportunities with his current investors because what he needed was to get 3.2 million dollars and what did he tell the investors the 3.2 million dollars was for was to build a you can go to government's exhibit 266 and the updated one I believe is in the SCR at four to five and they spend about three hundred and fifty thousand dollars the government never disputed it three hundred and fifty thousand dollars on different mining operations during that four-year period during that same four-year period they paid themselves over $800,000 in salary and then paid separately from salary because I know there was a lot of argument about well the jury heard about and said that the investors thought legitimate salary was okay well legitimate salaries more than double the investment into the mine may not have been legitimate but there was also payments for jewelry payments for a vacation home all these are separate payments above and beyond this salary so when Judge Simon and I think one thing to remember in this record is Judge Simon had a rare opportunity for a trial judge because this case was tried first a first time but there was a mistrial because defense counsel was ill he had already heard all of this testimony once before and he allowed the parties to come back he redid the entire pretrial conference he reheard everything he reconsidered his rulings and he once again decided Norm and Eric Stedele were relevant and admissible and he found that the cease and desist order was a half-truth but even if this court were to find that somehow Judge Simon abused its discretion any error was harmless when you look at how long the Stedele's testified total testimony for the two of them was about 33 minutes on a day where the jury heard over five and a half hours of testimony and there were five five-hour days of testimony 12 total victims 18 total witnesses and the cease-and-desist order was one exhibit out of over 200 I have a question about the cease-and-desist order any other justification given half-truth of his supposedly successful career well for example was there an argument that showed intent or knowledge or other aspects that were required to be proved yes your honor and you can see at the pretrial transcript at page 57 the law the 1993 order is probative of intent to defraud and so we did argue that as an alternative basis when you look carefully at Judge Simon's order I think he he focuses more on the half-truth but I do believe we argued intent to defraud on page 57 of that order so I think the overwhelming evidence including evidence as simple as in August 2010 telling the investors we're almost there we're almost in production and an investor sends another $10,000 but we find out that there's no production going on in fact a year later there's $1,500 in the bank and they're under SEC investigation and they're still seeking investors that's the evidence that the jury relied on and we know the jury look carefully because they actually hung on one of the money laundering accounts involving a vehicle that was purchased because that vehicle was used one time for the business and so the jury thought you know what maybe that one is actually an okay purchase we ended up dismissing because they hung but so this notion that they focused on 30 minutes of testimony and ignored everything else that was presented just isn't borne out by the record and that's not there's no there's a fair assurance that this verdict was based on the evidence and the evidence of fraud was overwhelming there is a restitution issue I think that's a factual question one that the judge made a determination that Norm Stedelli had been pulled in by Harry Crabfoot into the Three Eagles I think the law is clear I submitted a 28-J letter on Monday regarding the fact that this court has made clear that restitution isn't cabin to just the exact counts of the indictment so I don't believe that Judge Simon's finding that Norm Stedelli was part of this fraud was owed restitution is clearly erroneous on this record and unless the court has further questions I'm happy to submit I don't see any rush to ask further questions so thank you thank you your honor and you have a bit of rebuttal time remaining thank you your honor just on the alternative argument of intent on the 1993 order in page 57 of the pretrial conference I would know I'm similar to the government's brief in this case that argument is it ties an intent to Lustiger in other words it's about that the omission of disclosure omitting the 1993 order in relation to the PowerPoint was evidence of intent for that to be evidence of intent there has to be a duty in the first place there was not an argument that the 1993 order by itself could be used as evidence of intent and that it was I mean just essentially it was too old and and so and just real quickly in looking at Thompson for the restitution issue I cited in my brief I see the application of that case and I do agree I think it's an issue of clear error but in comparing norms sadly with the victim in the Thompson case different means a different victim a different location and a different time I think the restitution error it was clear error on the district courts part but that's all I have thank you very much counsel the case just argued is submitted we appreciate helpful arguments from both of you and we will now take a five recess before we hear the remainder of the calendar
judges: McKeown, Graber, Paez